CASE 42.—ACTION BY JAMES A. GREEN'S ADMINISTRATORS
AGAINST THE FIDELITY TRUST COMPANY OF
LOUISVILLE AND OTHERS TO ADJUDGE VOID
CERTAIN TESTAMENTARY TRUSTS—June 18, 1909.

# Green's Admrs. v. Fidelity Trust Co. of Louisville, &c.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for defendants, plaintiffs appeal.—Affirmed.

1. Charities—Purposes of Gift—"Public Charity."—A testamentary trust to establish and maintain an orphan's asylum for the maintenance and education of the orphan children under 17 years of age and members of a secret society is a "public charity," and valid, within Ky. St. Sec. 317, relating to gifts to charity.

2. Charities—Gifts—Certainty.—A testamentary trust to establish and maintain an orphans' asylum for the maintenance and education of the poor orphan children under 17 years of age of members of a secret society is not void for indefiniteness, and the beneficiaries are named with sufficient certainty.

3. Trusts—Enforcement—Appointment of Trustees—Jurisdiction of Court.  Ky. St. Sec. 318, providing that no trust shall be defeated for want of a trustee, but equity may uphold the same by appointing trustees, etc., is but declaratory of the rule of equity on the subject, and, where a trust is once properly created, the incompetency, disability, or nonappointment of a trustee will not defeat it, but equity will administer and enforce the trust, and, if necessary appoint trustees.

4. Perpetuities—What Law Governs.—A charitable trust will be administered according to the law of the donor's domicile, and the fact that it is to be administered abroad does not make the gift void, when it does not appear that it is not a valid charity in the foreign country, and a bequest to a charity or on a trust to be administered in another state, when lawful

in the place of the testator's domicile, may be sustained in the state in which the fund is to be administered, though it contravenes the statute of the state against perpetuities, since it is not the policy of one state to interdict perpetuities in other states.

5.    Charities—Administration of Charitable Trusts—Jurisdiction of Courts.—A testator who resided in Kentucky, devised his property, situated in Kentucky, in trust to establish and maintain in a sister state an orphans' asylum for the nurture and education of orphans under the age of 17 years of members of a secret society of the sister state. Held, that courts of equity of Kentucky would administer the trust in Kentucky, and require the trustee in Kentucky to protect the trust by paying the income over to a trustee appointed by the sister state, on it being found necessary to have two trustees to carry the trust into effect.

JAS. A. SCOTT, B. G. WILLIAMS, ROBERT B. FRANKLIN, W. C. MARSHALL, ELWOOD HAMILTON, JOHN E. SCOTT and ELMER E. SCOTT for appellants.

## CLASSIFICATION OF AUTHORITIES

1.    Incapacity of Clark Lodge.    (a.) Clark Lodge No. 40, Free and Accepted Masons, of Jeffersonville, Ind., at the time of testator's death had not, has not now and can not in the future acquire power or capacity to take and hold the estate attempted to be bequeathed and devised to it in trust, nor to administer the trust sought to be created by the will.    Judgment on motion of Clark Lodge appointing Fidelity Trust Company trustee.    (Tr., p. 8); 1 R. S. Ind. (1852, pp. 458—495; I R. S. Ind. (1881), pp. 799-802; Acts (Ind.) 1895, p. 13. Above laws pleaded, Tr. pp. 10-16.

(b.)    The lodge has only local existance and power.    It can not acquire or hold land in Kentucky.    It can not hold land or personal estate in Indiana more than authorized by the statute and only for the uses prescribed by the statute.    Cromie's Heirs v. Lousiville Orph. Home, 66 Ky. 365 (3 Bush) (1867); Case v. Kelly, 133 U. S. 21, 33 L. ed. 513 (1889); Mount v. Tuttle, 183 N. Y. 358, 76 N. E. 873 (1906); 10 Cyc., pp. 1127-1130-1136 and cases; 19 Cyc., pp. 1214-1224 and cases.

(c.)    If it was an unincorporated association it can not act as trustee for a public charity.    McCord v. Ochiltree, 8 Blackf. (Ind.) 15 (1846); Grimes' Extr. v. Harmon, 35 Ind. 198-206 (1871); Mount v. Tuttle 183, N. Y. 358, 76 N. E. 873 (1906); 4 Cent. Dig., Associations, sec. 24.

(d.) The will contains no direction for the incorporation of the lodge. There is no direction that it shall become empowered by legislation. As an unincorporated body it could not be empowered to take, hold or administer as trustee in perpetuity. See authorities, supra. 2 Underhill on Wills, section 829.

(e.) If it had not power at the time of the death of the testator, subsequent legislation conferring power would not divest the title of the heirs if the title had in the meantime vested in them. Matter of McGraw, 111 N. Y. 66, 19 N. E. 233 (1888); White et al v. Howard et al., 46 N. Y. 144 (1871); Mount v. Tuttle, 183 N. Y. 358, 76 N. E. 873 (1906); 10 Cyc., pp. 1129-1130-1135.

2. Invalidity of Trust—Impossibility of Execution. (a) Foreign Charity—Jurisdiction. A court can not and will not undertake to administer a foreign charity. The trustee and charity must be under the jurisdiction of the courts of the state or country in which the charity is to be administered, and the trustee must be competent to take, hold, and administer the fund under the laws of that country or state. If the will does not direct or permit the transmitting of the fund to such trustee the foreign charity can not be upheld. Peynado's Devisees v. Penaydo's Extr., 82 Ky. 5, 5 Ky. Law Rep. 753 (1884); Coleman etc., v. O'Leary's Exers., 114 Ky. 388, 24 Ky. Law Rep. 1248 (1902); Taylr v. Bryn Mawr College, 34 N. J. Eq. 101, (VII Stewart) (1881); Chamberlain v. Chamberlain, 43 N. Y. 424 (1871); Manice v. Manice, 43 N. Y. 303-389 (1871) Hope v. Brewer, 136 N. Y. 126, 32 N. E. 558 (1892); McDonough v. Murdoch, 15 How. (U. S.) 367, 14 L. ed. 732 (1853); Bascom v. Albertson, 34 N. Y. 584 (1886); Mount v. Tuttle, 183 N. Y. 358, 76 N. E. 873 (1906); Schwartz v. Gerhardt, 44 Or. 425, 75 Pac. 689 (1904); 5 Am & Eng. Enc. 2nd ed., p. 925; 2 Perry on Trusts, sec. 741; 2 Beach on Trusts and Trustees, sec. 758; Wharton on Conflict of Laws, 3d ed., sec. 591b; Tudor's Charitable Trusts, 3d ed., p. 127; Boyle on Charities, p. 134; Hill on Trustees, p. 468, 4th American ed., p. 728.

(b.) A trust to be valid must be under the supervision of a court and must be of such a nature and scheme that it may be established, administered and enforced by the decree of a court of equity. Coleman, etc., v. O'Leary's Extrs., 114 Ky. 388-405, 24 Ky. Law Rep. 1248 (1902); Troutman et al. v. De Boissiere Odd Fellows Orph. Home, 66 Kan. 1, 71 Pac. 286 (1903); 2 Perry on Trusts, sec. 711 and cases.

(c.) The trust sought to be created by the will of the decedent derives its potentiality wholly from the judgment of the Kentucky court, and the trust must be administered, if at all, under Kentucky law by the Kentucky court. 2 Beach on Trusts and Trustees, sec. 785; Schwartz v. Gerhardt, 44 Or. 425, 75

Pac. 698 (1904); Coleman, etc., v. O'Leary's Extrs., 114 Ky. 388, 24 Ky. Law Rep. 1248 (1902).

(d) If the trust is not of a nature that the attorney-general can bring an information or file a bill for the protection of the public interests it is not a public charity. The attorney-general can not file an information or bill to enforce a foreign charity. Troutman v. De Boissiere O. F. Orph. Home, 66 Kan. 1, 71 Pac. 286 (1903); Jenkins v. Berry, 119 Ky. 350, 26 Ky. Law Rep. 1141 (1904); Attorney-General v. Soule, 28 Mich. 153-155 (1873); Bobbet v. State, 10 Kan. 9 (1872); People v. Powers, 29 N. Y. Sup. 950; Perry on Trusts, sec. 732.

(e.) The sustaining of the charity as an institution under the constitution and laws of Kentucky in Indiana would be contrary to the public policy of the state. It would be exempt from taxation and would not relieve the commonwealth of Kentucky of any burdens. Ky. Const., sec. 170; Widows' and Orphans' Home v. Commonwealth, etc., 31 Ky. Law Rep. 775, 103 S. W. 354 (1907); Ford v. Ford's Extr., 91 Ky. 572, 13 Ky. Law Rep. 183 (1891); Johnson v. DePauw Univer., 116 Ky. 671, 25 Ky. Law Rep. 950 (1903).

3. Private Trusts—Charitable Uses. (a.) If the scheme of the will creates a private trust it is void (1) as offending against the rule respecting perpetuities, (2) the statute against the suspension of the power of alienation, and (3) the rule that in private trusts the beneficiaries must be named, or pointed out with reasonable certainty and identified, and not be vague, indefinite and uncertain as in case of public charities. Fidelity Trust Co. v. Lloyd, 25 Ky. Law Rep. 1872, 78 S. W. 896 (1904); Crawford's Heirs v. Thomas, 21 Ky. Law Rep. 1100, 54 S. W. 197 (1899); Johnson v. DePauw University, 116 Ky. 671, 25 Ky. Law Rep. 950 (1903); Troutman v. De Boissiere, etc., 66 Kan. 1, 71 Pac. 286 (1903); Perry on Trusts, secs. 23-377-392; 2 Underhill on Wills, secs. 811-890-892;

(b.) Definitions of public and private charities. Distinguishing principles. Cases, supra; Ford v. Ford's Extrs., 91 Ky. 572, 13 Ky. Law Rep. 183 (1891); Johnson v. DePauw University, 116 Ky. 671, 25 Ky. Law Rep. 950 (1903); Grimes' Extr. v. Harmon, 35 Ind. 198 (1871); Erskine v. Whitehead, 84 Ind. 357 (1882); Trutman v. De Boissiere, etc., 66 Kan. 1, 71 Pac. 286 (1903); Perry on Trusts, sec. 732.

4. Tax Exemption Cases. 12 Am. & Eng. Enc., 2d ed., p. 343, note; City of Newport v. Masonic Temple Assoc., 108 Ky. 333, 21 Ky. Law Rep. 1785 (1900); Widows' and Orph. Home of Odd Fellows v. Bosworth, 112 Ky. 200, 23 Ky. Law Rep. 1505 (1901); Widows' and Orphans' Home v. Commonwealth, 31 Ky. Law Rep.

775, 103 S. W. 354 (1907); Crawford's Heirs v. Thomas, 21 Ky. Law. Rep. 1100, 54 S. W. 197 (1899); Commonwealth v. Thomas, 119 Ky. 208, 26 Ky. Law Rep. 1128 (1904); Cruse v. Axtell, 50 Ind. 49 (1875).

HAZELRIGG & HAZELRIGG, McQUOWN & BECKHAM, GEORGE A. BRENT and ERNEST MACPHERSON for appellee.

## CLASSIFICATION OF POINTS AND AUTHORITIES.

1. Whether Clark Lodge No. 40 of Masons of Jeffersonville, Ind., was or is incapacitated or was or is competent to act as trustee under the will of James A. Holt is immaterial under our statute in the consideration of the charity. Coleman v. O'Leary, 114 Ky., 388; Ky. Stat., sec. 318. The Fidelity Trust Co. is the duly appointed trustee according to the provisions of the will and by orders of the Franklin County Court.

2. The charity established by the will of James A. Holt is public in the sense of the statute of charitable uses and trusts, both under the decisions of courts of Kentucky and of Indiana. Widows and Orphans' Home of Odd Fellows v. Commonwealth, 31 Ky. Law Rep., 775; City of Newport v. Masonic Temple Association, 108 Ky., 333; City of Indianapolis v. Grand Master, 25 Ind., 522.

3. Whether the property here devoted to charity be or be not taxable is a question not before the court, and does not concern the appellant. That question could only arise in a suit by the Commonwealth.

4. The purpose of the charity is pointed out with reasonable certainty under all the Kentucky rulings. Gass v. Wilhite, 2 Dana 170; Moore v. Moore, 4 Dana 354; Curd v. Wallace, 7 Dana 190; Curling's Adm'r v. Curling's Heirs, 8 Dana 38; Chambers v. Baptist Educational Society, 1 B. Mon., 214; Attorney-General v. Wallace, 7 B. Mon. 612; Cromie's Heirs v. Louisville Orphan's Home, 3 Brush 372; Peynado v. Peynado, 82 Ky. 13; Leeds v. Shaw, 82 Ky. 79; Kinney v. Kinney, 86 Ky. 611; Penick v. Thom. 90 Ky. 666; Ford v. Ford's Exr., 91 Ky., 573; Givens v. Shouse, 5 Ky. Law Rep. 414; Tichenor v. Brewer, 98 Ky. 349; Bedford v. Bedford, 99 Ky. 273; Chambers v. Higgins, 20 Ky. Law Rep. 1425; Crawford v. Thomas, 21 Ky. Law Rep. 1102; Spalding v. St. Joseph Industrial School; 107 Ky. 382; Coleman v. O'Leary, 114 Ky. 388; Thompson v. Brown 116 Ky. 102; Leak's Heirs v. Leak's Exr., 25 Ky. Law Rep. 1703; Kasey v. Fidelity Trust Co., 115 S. W. 739.

5. The charitable purpose is pointed out with reasonable certainty under all the Indiana decisions. Ex parte Lindley, 32 Ind 376, Grimes v. Harmon, 35 Ind. 198; Cruse v. Axtell, 50 Ind. 49, Erskine v. Whitehead, 84 Ind. 357; Hains v. Allen, 78 Ind. 102; Skinner v. Harrison Township, 116 Ind. 139; Board of Commissioners of Rush County v. Dinwiddie, 139 Ind. 128.

6. That the charity is to be applied in a sister State does not affect its validity. Peynado v. Peynado, 82 Ky., 13; Kasey v. Fidelity Trust Co., 115 S. W. 739; McDonough v. Murdock, 15 Howard U. S. 367; Perry on Trusts, sec. 71.

7. The laws of another State are facts of which our courts are to be informed as of other facts. Kline v. Baker, 99 Mass. 253.

8. It is equally well settled that in case no testimony be offered as to what the law in question is, our courts will presume it is the same as our own. Chase v. Insurance, 9 Allen 311.

9. Kentucky courts necessarily have jurisdiction of property here. Indiana courts necessarily have jurisdiction of property there.

10. The charity is to be administered according to the laws of the domicile of the testator. "Cyc." vol. 6, p. 968.

11. Restriction imposed by law upon a corporation or voluntary society as to the amount of property it may hold for its own use do not apply to property held in trust. Kinney v. Kinney, 86 Ky. 611.

12. Non-resident persons, corporate or natural, may act as trustees in Indiana. Roby v. Smith, 131 Ind. 342; Shirk v. La Fayette, 52 Fed. 857; Farmers' Loan and Trust Co. v. Chicago & A. Ry. Co., 27 Fed. 146.

13. The cases on charities from Maryland, Virginia and in a degree those from Connecticut, New York, Michigan and Wisconsin are of little or no authority in Kentucky. Crawford's Heirs v. Thomas, 21 Ky. Law Rep. 1102.

14. There is no physical or any sort of impossibility in building the home, at the expiration of ten years, from the income of the property. See Duggan v. Slocum, 83 Fed. 244. If the will were susceptible of such construction as contended for by appellant he would not be benefitted. The home could be built at once. But the trustee has a reasonable time at or after the expiration of ten years. Caperton v. Stege, 91 Ky. 351; Cheatham v. Plinke, 1 Tenn. Ch. 576 and Davidson v. Crump Manufacturing Company, 99 Mich. 501, as to meaning of phrase "at the expiration of."

If the direction for accumulation were void, it would not affect the charity. City of Philadelphia v. Girard's Heirs, 45 Penn. St. 9; 84 Am. Dec. 470.

OPINION OF THE COURT BY JUDGE BARKER —Affirming.

This action was instituted by the heirs at law of James A. Holt, deceased, for the purpose of having certain trusts established by his will construed and declared void. The decedent, at the time of his death, in 1906, was a resident of Franklin county, Ky. He left a large estate, real and personal, and his will and the codicils attached were admitted to probate by the judgment of the Franklin county court in 1906. The will and the first codicil thereto, which are pertinent to the subject under investigation, are as follows:

"I, James A. Holt, of the county of Franklin, State of Kentucky, make and declare this my last will, hereby revoking all wills by me heretofore made.

"First. I direct my executor, hereinafter named, as soon after my decease as possible, to pay all my just debts and funeral expenses.

"Second. I devise to Mrs. Fannie Ives, of said county, the set of rosewood bedroom furniture and all the bedroom effects used by me personally; also the bedroom furniture and bedroom effects used by her personally; also all of my tableware at my residence that she may desire and select.

"Third. I devise the rest and residue of my estate, real, personal and mixed, of every description, and wherever situated, including a farm in said county of Franklin, wherein I now reside, being the same described in deed recorded in Deed Book No. 16, at page 237, in the office of the clerk of the county court of said county; also including the estate in remainder after the death of the said Fannie Ives, in a lot of land in Louisville, Kentucky, on the south side of Market street, between Second and Third

streets, same described in a deed recorded in the office of the clerk of the Jefferson county court in Deed Book 240, page 163, also including the estate in remainder after the death of the said Fannie Ives, in a lot of land in said city on the north side of Main street between Twentieth and Twenty-first streets, being same described in deed recorded in the office of the clerk of the Jefferson county court in Deed Book No. 176, page 400, to Clark Lodge No. 40, Free and Accepted Masons at Jeffersonville, Indiana, but on the following trusts only: Said lodge shall, as soon as in the discretion of its members it can advantageously be done, sell my said farm in Franklin county and my house and lot on Washington street in Louisville, Kentucky, known as 'The Pink Varble Property,' and shall invest the proceeds of said sale in good, solid, paying real estate in the city of Louisville, Kentucky, and shall keep the personal estate and its proceeds at all times safely and profitably invested in stocks, bonds and other good and safe, paying securities, and shall pay out of the income of my estate to my Aunt Elizabeth Fisher during her life, the first of each month, $25, and to the said Fannie Ives, during her life, on the first of each month, $50, and shall bury me in the Walnut Ridge Graveyard in Jeffersonville, Indiana, by my father and mother, and shall erect over the graves of my father, mother and myself a single monument appropriately inscribed, at a cost therefor of $5,000, and shall, carrying out the wishes of my mother and in obedience to the last request of me, cause the remains of Mrs. Fannie Ives, who was the daughter of a Mason, and was my mother's, and has been my faithful nurse, to be buried in said graveyard and as near as possible to the said graves

of my father and mother and myself, and shall erect over her grave a monument appropriately inscribed, to cost $500, and see that all of said graves are cared for and kept in order forever, and said lodge for the space of ten years from the date of my death shall devote all the remainder and residue of the net income from said real and personal estate to the profitable improvement of my vacant ground, the keeping of the property in repair and order and the purchase of solid, paying real estate in the city of Louisville, and at the expiration of said ten years said lodge shall erect from the income of said property in or near the corporate limits of the city of Jeffersonville, Indiana, in a healthful and suitable locality, a building, not large or expensive, but such as said income will suffice to erect and conveniently maintain under its perpetual supervision, direction and control, and shall maintain forever the same as an institution for the nurture, support and education of the poor infant orphans under the age of 17 years of the Free Masons of the state of Indiana, and said lodge shall not sell any part of my real estate, or use any of the principal of my said personal estate, further than herein provided, but shall hold the same and carry out and effectuate the provisions of this, my will, from the income."

"Fifth. If said Clark Lodge be, at the time of my death, incapable, in law, of taking under my will and administering the trusts herein provided, then I devise all the property hereinbefore devised to said lodge to Byron Bacon, of Louisville, Kentucky, upon like trusts and upon the further trusts that he shall, as soon as said Clark Lodge shall be by proper means and by law empowered to so take and hold and administer said trust, he shall convey

by appropriate instrument or instruments of conveyance all said property to said lodge upon said trust. But should the said Byron Bacon, from any cause, not act, or cease to act as such trustee, then I direct that the court having jurisdiction of such matters, shall appoint in his stead, a trustee with like power who shall so hold and convey said property.

"Sixth. I appoint Byron Bacon, of Louisville, Kentucky, executor of this, my last will, and direct that if he should refuse or cease to act said Clark Lodge designate a proper person who shall qualify as administrator of my estate with this, my will, annexed.

"In testimony whereof, I have hereto set my hand on this day of November 24, 1883.

"JAMES A. HOLT.

"Witnessed by E. L. Samuel, J. W. Pruett."

"In testimony whereof I have hereunto again set my hand and declared this to be my last will on this 9th day of April, 1900.

"(Signed)   JAMES A. HOLT.

"Witnesses: H. H. Nettleroth, E. J. Bacon and Clay H. Bacon.

"Whereas, I, James A. Holt, have made my last will and testament in writing, dated November 24, 1883, now, therefore, I do by this writing, which I hereby declare to be a codicil to my said will and to be taken as a part thereof, order and declare that my will is that the poor infant orphans under the age of 17 years of the Free Masons of the state Indiana, named or designated as beneficiaries in the third paragraph of my said will, are to be white children.

"Witness my hand at Louisville, Kentucky, this 23d day of September, 1904.

"James A. Holt.

"Witnesses:Ernest Macpherson, Simeon S. Johnson."

Sections 317 and 318 of the Kentucky Statutes (Russell's St., Secs. 2300, 2301), under which the trust established by the will is sought to be upheld, are as follows:

"Sec. 317.   All grants, conveyances, devises, gifts, appointments and assignments heretofore made, or which shall be hereafter made, in due form of law, of any lands, tenements, rents, annuities, profits, hereditaments, goods, chattels, money, stock, or choses in action, for the relief or benefit of aged or impotent and poor people, sick and maimed soldiers and mariners, schools of learning, seminaries, colleges, universities, navigation bridges, ports, havens, causeways, public highways, churches, houses of correction, hospitals, asylums, idiots, lunatics, deaf and dumb persons, the blind, or in aid of young tradesmen, orphans, or for the redemption of prisoners or captives, setting out of soldiers, or for any other charitable or humane purpose shall be valid, if the grant, conveyance, devise, gift, appointment, or assignment shall point out, with reasonable certainty the purposes of the charity, and the beneficiaries thereof, except as hereinafter restricted.

"Sec. 318.   No charity shall be defeated for the want of a trustee or other person in whom the title may vest; but courts of equity may uphold the same by appointing trustees, if there be none, or by taking control of the fund or property and directing its management and settling  who  is  the  beneficiary thereof."

After the death of the testator, Clark Lodge No. 40, Free and Accepted Masons, which is named in the will primarily as trustee, did not offer to qualify, and was not appointed.  Byron Bacon, who is nominated as trustee, if for any reason Clark Lodge should be incompetent for that position, had died before the testator, and thereupon the Fidelity Trust Company of Louisville was appointed administrator with the will annexed, and also as trustee under the will.  After its appointment, the trust company qualified, and took possession of all the estate as administrator and trustee.  Fannie Ives and Elizabeth Fisher, who are mentioned in the will as special legatees and devises, are dead, and there are now no parties in interest, except the plaintiffs, who are the heirs at law of the decedent, and the defendant, the administrator and trustee.

The trust established by the will, which is the subject of attack in this action, was created for the purpose of establishing and maintaining an orphans' asylum at Jeffersonville, Ind., for the nurture, maintenance, and education of the orphan children of Free and Accepted Masons of the state of Indiana, who are under 17 years of age.  One of the objections to the trust is that, as the charity is limited to the children of Masons, it is a mere private charity, and, being such, it is void as offending against the statute prohibiting perpetuities.  It is a sufficient answer to this position to say that we had occasion to examine this question at great length in the case of Widows' and Orphans' Home v. Commonwealth, 103 S. W. 354, 31 Ky. Law Rep. 775, 126 Ky. 386.

We there held that a widows' and orphans' home for the benefit of the widows and orphans of Odd Fellows was a purely public charity, and, as such,

exempt from taxation under our Constitution; and we expressly overrule all of the opinions theretofore enunciated by the court establishing a contrary rule. In the opinion in the case cited we said: ''The convention meant by the word 'purely' to describe the quality of the charity, rather than the means by which it is administered, that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity, but it was never meant that, because a charity was limited by its terms to objects belonging to a certain sect, or fraternal order, or color, or class, it was a private, and not a public, charity. The members of the convention were wise and practical, and knew that men, as a rule, administer their charity through the organization, or organizations, to which they belong. Thus Catholics will naturally distribute their charity through the organizations of the Catholic church; Presbyterians through those of the Presbyterian church; Masons through the organization of the Masonic order,'' etc. Again: ''Seeing, then, that the various charities, which the generous portion of the community administer through the separate organizations to which the donors belong, as a practical proposition cover the whole field of the state's duty to her indigent and helpless citizens, and that they together contribute to the whole public burden, where could be the wisdom in discouraging such a charity? And what good purpose can be subserved by indulging in a strained construction of a phrase in order to reach the conclusion that the members of the constitutional convention meant to throw away as useless the powerful aid which the state could otherwise enjoy in the contributions of charitable men? What good purpose is sub-

served in attaching the word 'private' to the charity of Catholics for Catholics, Presbyterians for Presbyterians, Masons for Masons, or Odd Fellows for Odd Fellows? Are the poor and helpless of these various bodies and organizations any less worthy, or any less a part of the public, because they are also members of the particular church or society to which they belong? Are not all charitable institutions necessarily limited to the relief of only a small part of the destitute public? Can any one institution administer to the wants of all? And if this be true, is it necessary to brand as 'private' a charity which by its terms marks out a particular part of the public field in which it is to be administered?''

The theory of the appellants in this case would destroy every widows' and orphans' asylum in the state. The presbyterian church establishes asylums for the widows and orphans of its indigent members; the Masons for Masons, the Odd Fellows for Odd Fellows. All of the property thus dedicated is held by the trustees in trust for charities established by the donors. If the trust attacked in this case is void for the reason now under consideration, then the trusts by which all of the widows' and orphans' asylums in the state are established are void for the same reason. The trust contained in the will falls directly within the language of section 317 of our statutes, supra, which is but a substantial re-enactment of 43 Elizabeth.

· Again, it is said that the trust is void as being too vague and indefinite for practical enforcement. This objection can not be maintained. A glance at the will reveals that the trust is established by apt language, which marks out with sufficient certainty the general scope of the charity sought to be estab-

lished.   The beneficiaries are named with as much certainty as is possible under the circumstances. They are defined in general class as the orphan children of White Free and Accepted Masons of Indiana, under the age of 17 years.

In the case of Kasey v. Fidelity Trust Co., et al. (Ky.) 115 S. W. 739, 131 Ky. 604, 609, we held that a devise to the Fidelity Trust Company of property to be held in perpetual trust, the interest accruing on the endowment to be paid over annually to the American Bible Society for the purpose of "distributing the Bible or Word of God to the destitute of the earth," was not too vague to be enforced.   In the case of Leak's Heirs v. Leak's Ex'or, 78 S. W. 471; 25 Ky. Law Rep. 1703, a trust was upheld which provided: (1) For the aid of a bible training and missionary school for Christian workers; (2) for the support of a missionary, or missionaries, in the foreign field; (3) to aid in carrying on the cause of bible holiness, including fire-baptized holiness work and evangelism; (4) to aid in the support of needy and destitute ministers of the gospel.

In Thompson's Ex'or v. Brown, 116 Ky. 102; 75 S. W. 210; 25 Ky. Law Rep. 371; 62 L. R. A. 398; 105 Am. St. Rep. 194, a charitable bequest was vested in the testator's executor, to be "by him distributed to the poor in his discretion."   All of these trusts were upheld by this court, although it is apparent that they are much more vague and indefinite than that under consideration.   In a note to section 748 of Perry on Trusts the learned author says: "In Kentucky, the statute of Elizabeth is in full force by adoption, and the courts have carried their equity jurisdiction to the extreme verge of the law in estab-

lishing charities." See Gass v. Wilhite, 2 Dana, 170; 26 Am. Dec. 446; Moore v. Moore, 4 Dana, 354; 29 Am. Dec. 417; Attorney General v. Wallace, 7 B. Mon. 611.

A third objection to the charity is that the trust fund is required by the terms of the will to be kept in Kentucky, while the income is to be administered in establishing a charity in Indiana; it being said that our courts will not undertake to administer a charity out of the state. Without giving our consent to the proposition of law involved in this objection, it may be assumed, for the purposes of the argument, to be sound; and yet it would offer no insuperable objection to the practical enforcement of the charity established in the will under discussion. Our statutes (section 318, Ky. St., supra), provide that no trust shall fail for want of a trustee or other person in whom the title may vest; but courts of equity may uphold the same by appointing trustees, if there be none, or by taking control of the fund or property and directing its management and settling who is the beneficiary thereof. This statute is but declaratory of the ancient and universal rule of equity jurisprudence on the same subject. In Perry on Trusts, Sec. 38, it is said: "It is a rule that admits of no exception that equity never wants a trustee, or, in other words, that if a trust is once properly created, the incompetency, disability, death, or nonappointment of a trustee shall not defeat it." Story, in his Equity Jurisprudence, Sec. 976, states the same rule in practically the same language. So that, even if we assume that our courts of equity will not administer so much of the trust as is required to be carried into execution in the state of Indiana, still it will administer and enforce the trust in this state, and will re-

quire the trustee here to carry into effect the trust established by the will by paying over the income to a trustee appointed by the court of Indiana, if it be found necessary to have two trustees to carry into effect the wishes of the donor. The same equitable principle which authorizes the appointment of one trustee in order to effectuate a trust will also authorize the appointment of two. The law is a practical science, and we see no difficulty in the practical enforcement and effectuation of the trust by reason of the fact that the body of the trust fund is required to be kept in Kentucky and the income expended in Indiana. The fact that the testator did not name two trustees—one in Kentucky and the other in Indiana—is entirely immaterial. If he had named none, or said nothing about a trustee, still, under our statute and the general principles of equity jurisprudence before alluded to, a trustee, or trustees if more than one is necessary, would be appointed by the tribunals having jurisdiction at the places where such appointment is essential to the effectuation of the trust.

In Perry on Trusts, Sec. 741, it is said: "Bequests to be paid over to trustees in a foreign country, for the establishment in such country of a charitable institution, will be paid over to such trustees, by order of court, to be administered by them under the jurisdiction of the courts of their own country."

In Kasey v. Fidelity Trust Co. et al., supra, a perpetual trust was established in Kentucky for the "purpose of distributing the Bible or Word of God to the destitute of the earth," through the instrumentality of the American Bible Society, of New York. In Peynado's Devisees v. Peynado's Executor, 82 Ky. 5, 5 R. 713, the testator, who resided in Kentucky,

devised a fund to the city of Malaga, Spain, for the purpose of establishing an orphan asylum in that city. Both of these trusts were upheld.   In the case of Executors of McDonough et al. v. Murdock et al., 15 How, 367; 14 L. Ed. 732, the testator, who was domiciled in Louisiana, established by his will a trust which was to be carried into execution in part in the state of Maryland.   Upon this branch of the case the Supreme Court of the United States said: ''Neither do we concede that the uses, being in a degree foreign to the state of Louisiana, impair the effect of the will. It is well settled that, where property is conveyed to a use which would be protected if to be executed at home, in the absence of a prohibition the conveyance would be valid if the execution were ordered to take place abroad.''

In 6 Cyc. p. 968, the rule under consideration is thus stated: ''The courts will not administer a foreign charity.   The charity is administered according to the law of the donor's domicile; and the fact that it is to be administered abroad does not make the gift void, especially when it does not appear that it is not a valid charity in the foreign country.   A bequest to a charity, or upon a trust to be administered in another state or country, when lawful in the place of the testator's domicile, may be sustained in the state in which the fund is to be administered, though it contravenes the statute of the latter state against perpetuities, since it is not the policy of one state to interdict perpetuities in other states.   If the gift is clearly against the public policy of the state called upon to administer it, its courts may decline to administer it, and remit the fund to the testator's domicile, but they can not properly divest the title and transfer it to others.''

The question as to whether or not the charity under consideration is a purely public charity within the meaning of our Constitution, so as to exempt it from taxation, is not before us. It might well be considered that property held in trust for a foreign orphanage is not exempt from taxation under our Constitution, and yet be a public charity within the meaning of our statute on charitable uses above set forth. The question of exemption from taxation not being before us, we reserve our opinion upon that question until it properly arises.

In conclusion, it may be said that charitable trusts are the favorites of equity. Springing, as they usually do, from the very best that is in human nature, and having for their object the amelioration of the hard condition of those who are at odds with fate and fortune, it is the policy of an enlightened jurisdiction to uphold and sustain them wherever this can be done without violation of positive principles of law. Nor will these principles be strained in order to destroy trusts which have been well defined as being "whatever is given for the love of God, or for the love of our neighbor in the catholic and universal sense." To sustain and effectuate them equity will not balk or halt at imaginary difficulties, but will do all that may be legally done in a practical catholic manner, in order to carry them into successful execution. Nowhere in our jurisdiction is there to be found an apter place for the application of the maxim "ut res magis valeat quam pereat" than when the chancellor is called on to construe a bequest to charitable uses.

As the judgment below upheld the trust under discussion and dismissed the petition, and this being con-

sonant with the principles announced herein, it is af-firmed.